IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JACK A. STARK,

           Plaintiff,

vs.

CITY OF OMAHA, NEBRASKA, et al.,

           Defendants.

4:23-CV-3242

MEMORANDUM AND ORDER

      The plaintiff, Dr. Jack A. Stark, was arrested for witness tampering. Filing 1 at 38. He claims the arrest and subsequent prosecution lacked probable cause. The plaintiff is suing the City of Omaha, Omaha Police Chief Todd Schmaderer, and Omaha police officer Nicolas Yanez (collectively, the city defendants) for violations of his constitutional and statutory rights under 42 U.S.C. § 1983. *See* filing 1 at 40-55. Stark further alleges that defendants Douglas H. Anders and Willie J. Miller conspired with the City and at least one unknown Jane or John Doe to initiate fraudulent criminal proceedings against him. *See* filing 1 at 55-57. The defendants have moved to dismiss the plaintiff's complaint. Filing 23; filing 25; filing 39.

I. STANDARD OF REVIEW

      A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more

than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss the Court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*.

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the Court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## II. BACKGROUND

### 1. MILLER'S ACCUSATIONS

Doug Anders was convicted of sexual assault of a minor in Douglas County in 2021. *See* filing 1 at 5; *State v. Anders*, 977 N.W.2d 234 (Neb. 2022). Miller was a friend of Anders, and Miller testified as a character witness on Anders' behalf. *See* filing 1 at 8-9. The plaintiff knew both Anders and Miller

through their relationships with the University of Nebraska football team. *See* filing 1 at 10, 12. The plaintiff also knew Anders' alleged victim. Filing 1 at 8. The plaintiff was on the prosecution's witness list to testify based on his relationship with Anders' victim, though the plaintiff was never actually called to testify. Filing 1 at 8.

The plaintiff had mentored Miller for several years prior to the Anders trial. Filing 1 at 9. The plaintiff learned, when preparing with the Douglas County Attorney's office for the trial, that Miller was listed as a witness for Anders. Filing 1 at 10. The plaintiff texted Miller on August 13, writing:

> Just an FYI. Not sure you know it but your name is listed as a character witness for a trial in two weeks on DOUG Anders. Do what you want but I will be testifying against him in the strongest language and if you want to know more let me know. Doubt if you are involved but just letting you know. Jack.

*Id.* The next day, the plaintiff and Miller spoke over the phone. Filing 1 at 11. The plaintiff claims they spoke, in part, about Miller's participation in Anders' trial. *Id.* According to the plaintiff, he told Miller to speak to Anders' attorney to avoid any undue stress. *Id.*

According to the plaintiff, Miller told Anders that the plaintiff planned to testify against Anders. Filing 1 at 12. Anders had listed the plaintiff as a potential witness for his own defense, and he "became furious" when he learned the plaintiff would testify against him. *Id.* The plaintiff alleges that at that point, Anders and Miller decided to lie about the plaintiff to try to prevent his testimony. The alleged lie they concocted involved the August 14 phone call between Miller and the plaintiff. *See* filing 1 at 15.

3

Miller allegedly told Anders' attorney that the plaintiff threatened to ruin Miller's reputation if Miller testified on Anders' behalf. Filing 1 at 13. Miller and Anders attempted to publicize the alleged lie, soliciting press conferences and podcast appearances. Filing 1 at 18-19, 22. Then, Anders' attorney (with Miller present) called 911 to report a case of witness tampering. Filing 1 at 19. A police officer met with Miller and the attorney and prepared a police report on August 29. Filing 1 at 20; *see* filing 1 at 22. Later, Miller (at Anders' direction) filed a complaint against the plaintiff with the Nebraska Department of Health and Human Services. *Id*. The Department declined to further investigate based on insufficient evidence. *Id.*

Miller called the Omaha Police Department several times to escalate his allegedly false claims against the plaintiff. Filing 1 at 22-23. The plaintiff alleges Miller also repeatedly contacted someone on the Omaha City Council. Filing 1 at 23. Miller and Anders also allegedly conspired with unknown others (named as defendants in this case as John or Jane Does 1-5) to pressure the Omaha Police Department and the city council. Officer Yanez of the Omaha Police Department interviewed Miller in October 2020. *Id.*

### 2. YANEZ'S INVESTIGATION

Initially, Yanez told his superiors that he was not the appropriate person to investigate Miller's claims. Filing 1 at 24. Regardless, the Captain of the Criminal Investigation Section ordered Yanez to spearhead the investigation, pursuant to a written policy allowing inappropriate personnel to investigate alleged crimes "when particular circumstances dictate." *Id*. Yanez met with Miller at the police station. The plaintiff alleges Miller told a series of easily-verifiable lies to Yanez during the meeting, which Yanez did not verify. *See id*.; filing 1 at 28. Miller also told Yanez about his history of drug and alcohol abuse.

4

Yanez obtained a copy of Miller's cell phone, including all of the text messages on his phone. Filing 1 at 28. However, the plaintiff alleges Yanez did not read any of those text messages, in which Anders and Miller communicated about fabricating claims against the plaintiff. *Id.* And the plaintiff alleges that Yanez did not interview any witnesses as part of his investigation into Miller's claims.

Yanez paused his investigation until the Anders trial concluded in February 2021. Filing 1 at 29, 32. Yanez neither participated in nor watched the Anders trial. Filing 1 at 32. In May 2021, Yanez drafted and presented an affidavit supporting a search warrant for the plaintiff's phone records. Filing 1 at 33. The plaintiff alleges that Yanez never interviewed the plaintiff about Miller's allegations, and the plaintiff alleges such an interview is a standard investigatory procedure. *See* filing 1 at 34. The plaintiff alleges that Yanez knew that Miller was likely lying, but Yanez ignored that possibility. Filing 1 at 34.

In August 2021, based on the above-described evidence, Yanez drafted an affidavit in support of arresting the plaintiff for the allegedly false witness tampering charges. Filing 1 at 35. Yanez followed the Omaha Police Department procedures; however, the plaintiff alleges those customary procedures encouraged officers "to file affidavits that are insufficient to establish probable cause." Filing 1 at 35. The department policy directs officers to document "only the minimal amount of information or case facts necessary." Filing 1 at 35. The plaintiff alleges Schmaderer, the police chief, established the policies regarding warrants. Filing 1 at 33.

According to the plaintiff, Yanez failed to investigate exculpatory evidence, including the text messages on both the plaintiff's phone and on Miller's phone, and he failed to include known exculpatory evidence in his

5

arrest warrant. *See id*. Yanez also allegedly made multiple materially false statements in his affidavit. *Id*. An arrest warrant was issued, based on Yanez's allegedly fraudulent statements. Filing 1 at 38.

### 3. PROSECUTION FOR WITNESS TAMPERING

The plaintiff was arrested in August 2021, based on the allegedly fraudulently obtained arrest warrant. Filing 1 at 38. Yanez sent two officers to arrest the plaintiff. *Id*. At the plaintiff's preliminary hearing in Douglas County court in October 2021, Yanez testified to several doubts he had about the veracity of Miller's claims. *See* filing 1 at 39. Yanez further testified to inconsistencies in Miller's allegations and Yanez's investigation. *See id*.

The plaintiff's trial began on January 17, 2023. Filing 1 at 39. The jury returned a not guilty verdict after deliberating for 27 minutes. Filing 1 at 40. The plaintiff now sues to recover his legal defense fees, lost wages, and medical expenses. Filing 1 at 58. He further seeks damages for physical and mental pain, suffering, anguish, emotional distress, embarrassment, humiliation, inconvenience, loss of enjoyment of life, and damage to his reputation. *Id*.

## III. DISCUSSION

The plaintiff alleges eight causes of action. *See* filing 1 at 40-57. Under § 1983, he claims his Fourth and Fourteenth Amendment rights were violated by the City of Omaha, Schmaderer, Yanez, and unnamed Omaha police officers based on an inadequate investigation, a fraudulently obtained arrest warrant, a false arrest, a malicious prosecution, and a civil conspiracy. He further asserts that the city defendants violated his rights under the First Amendment. The plaintiff also alleges that Anders and Miller are liable for malicious prosecution and civil conspiracy, and under § 1983 for conspiring with state agents to deprive the plaintiff of his constitutional rights.

1. CITY DEFENDANTS

The city defendants have moved to dismiss the individual and official capacity claims against Schmaderer, the official capacity claims against Yanez, and the claims against the City of Omaha. *See* filing 23 at 2. The city defendants also request that the state law tort claims against them be dismissed, but the plaintiff is not pursuing those claims against these defendants. Filing 1 at 57; filing 32 at 6.

(a) Official Capacity Claims

The plaintiff alleges the Omaha Police Department enforces two unconstitutional written policies, for which the City of Omaha is responsible under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). The first is a policy that "permits the assignment of investigations to inappropriate personnel 'when particular circumstances dictate.'" Filing 1 at 24 (quoting the alleged unconstitutional policy). The second is a policy that directs officers to document "'only the minimal amount of information or case facts necessary.'" Filing 1 at 35 (quoting the alleged unconstitutional policy). The plaintiff alleges the first policy led to Yanez's allegedly inadequate investigation into Miller's claims of witness tampering, and the second led to the plaintiff's arrest without probable cause. *See* filing 32 at 3.

The plaintiff is suing the City of Omaha, Yanez in his official capacity, and Schmaderer in his official capacity, related to these unconstitutional policies. Because a suit against a public official in his official capacity is a suit against the entity for which the officer is an agent, the official capacity claims against Yanez and Schmaderer are really against the City of Omaha. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A city is not liable for tort damages under § 1983 "solely because it employs a tortfeasor." *Tirado v. City of Minneapolis*, 521 F.

7

Supp. 3d. 833, 840 (D. Minn. 2021) (quoting *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)). Rather, a city can only be sued under § 1983 if the allegedly unconstitutional action stems from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *See id.*; *Doe ex rel. Doe v. Sch. Dist. Of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

A written policy that is facially constitutional does not itself give rise to municipal liability, even if it fails to give detailed guidance that might have averted a constitutional violation by an employee. *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 392 (8th Cir. 2007). Municipal liability might attach to a facially constitutional policy only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's "policy." *Id.* However, a single pled incident is insufficient to establish an unconstitutional policy or custom. *City of Norfolk*, 340 F.3d at 614.

The policies alleged by the plaintiff are facially constitutional. Allowing "inappropriate" personnel to investigate cases "when particular circumstances dictate," filing 1 at 24, can only plausibly be read to allow such actions to be taken when the circumstances would *not* infringe on individuals' constitutional rights. And instructing officers to include the minimal amount "necessary" in warrants, filing 1 at 35, can only plausibly be read as requiring officers to include facts necessary to establish probable cause.

The plaintiff hasn't alleged any other instances of warrants being issued pursuant to this policy without probable cause, or other instances where "inappropriate" personnel conducted inadequate investigations. Nothing in the complaint supports an inference of a pattern of constitutional violations making it "obvious" that additional training or safeguards were necessary. *See*

*Szabla*, 486 F.3d at 392. Nor are the alleged violations of the plaintiff's rights in this case supported by a showing that the municipality failed to train its employees to handle *recurring* situations presenting an obvious potential for such a violation. *See id.* at 393; *City of Norfolk*, 340 F.3d at 614. Rather, the plaintiff has only provided one such instance: his own experience.

The plaintiff has failed to state a claim for municipal liability based on unconstitutional policies, customs, or practices. For these reasons, the plaintiff's *Monell* claims against the City of Omaha and the city defendants in their official capacities will be dismissed. *See City of Norfolk*, 340 F.3d at 614.

(b) Schmaderer Individual Capacity Claims

Schmaderer argues that the plaintiff has failed to state a claim against him in his individual capacity. Filing 24 at 3. Specifically, Schmaderer argues that the plaintiff has failed to allege facts which indicate Schmaderer was personally, individually involved with the alleged conduct with violated the plaintiff's constitutional rights. The Court agrees.

The plaintiff alleges that Schmaderer established the allegedly unconstitutional written policies of the Omaha Police Department. For the reasons explained above, the plaintiff has not stated a claim under *Monell*. And the plaintiff has not alleged that Schmaderer was involved, in any capacity, in the alleged unlawful conduct—either when Yanez investigated the plaintiff or when Yanez drafted a search warrant and arrest warrant.

The plaintiff claims that the Court can reasonably infer that Schmaderer was individually involved with the plaintiff's prosecution because "it would be an unthinkable and breathtaking departure from routine police procedures for an officer to investigate and arrest an elected public official for a felony without the individual approval of the Chief of Police." Filing 32 at 5 (emphasis in original removed). But the complaint does not reference "routine police

9

procedures," how elected public officials are investigated or arrested, or Schmaderer's individual approval of the investigation or arrest. Rather, the complaint specifically alleges that the Captain of the Criminal Investigation Section (*not* Schmaderer) ordered Yanez to spearhead the investigation. Filing 1 at 24. And the complaint alleges that Yanez alone allegedly conducted an insufficient investigation and submitted an affidavit for a warrant without probable cause. *See* filing 1 at 33-34. Schmaderer, individually, is alleged to have established certain written policies, discussed above, without regard for the plaintiff. *See* filing 1 at 24, 33.

The plaintiff has not sufficiently alleged that Schmaderer was directly and personally involved in violating the plaintiff's constitutional rights by causing an inadequate investigation or by causing the plaintiff to be seized without probable cause. *See Jones v. City of St. Louis*, No. 22-3624, slip op. at 9 (8th Cir. June 17, 2024) (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir.), *cert. denied*, 522 U.S. 823 (2007)). In evaluating a motion to dismiss, the plaintiff enjoys the benefits of *inferences* drawn in his favor, but *not* speculation. *See Twombly*, 550 U.S. at 555. The claims against Schmaderer, in both his official and individual capacities, will be dismissed.

## 2. ANDERS AND MILLER

According to the plaintiff, Anders and Miller conspired to have the Omaha Police investigate the plaintiff for false claims of witness tampering by having Miller lie about threats the plaintiff made. The elements of malicious prosecution in Nebraska are: (1) the plaintiff was subject to a prosecution, (2) the defendant caused the prosecution, (3) the prosecution terminated in favor of the plaintiff, (4) no probable cause existed for the prosecution, (5) malice, and (6) damages. *E.g.*, *Bohling v. Tecumseh Poultry LLC*, 988 N.W.2d 529, 532 (Neb. 2023). And a plaintiff has stated a claim for civil conspiracy if he alleges

10

that two or more persons combined to accomplish by concerted action an unlawful object, or a lawful object by unlawful means, which constitutes a tort against the plaintiff. *Salem Grain Co. v. Consolidated Grain and Barge Co.*, 900 N.W.2d 909, 923-24 (Neb. 2017).

A defendant who supplies information to prosecuting authorities is liable for the prosecutors' action if the defendant either actively persuades or induces a prosecution, or if he knowingly provides false or misleading information. *McKinney v. Okoye*, 842 N.W.2d 581, 592 (Neb. 2014). The element of probable cause in a malicious prosecution action is evaluated from the perspective of the defendant in the action who is allegedly legally responsible to the plaintiff for the prosecution. *Id.* at 595. For the purpose of establishing liability for malicious prosecution, there is a lack of probable cause if a defendant knowingly provided false or misleading facts to prosecuting authorities supporting the suspicions of a crime. *Id.*

(a) Anders' Motion to Dismiss

Anders argues that the plaintiff's complaint fails to state a claim against him based on various deficiencies. He claims the plaintiff failed to allege facts which would prove certain elements of the malicious prosecution and conspiracy claims. The motion to dismiss will be denied.

The plaintiff alleged that "Anders and Miller engaged in a plan designed to have Dr. Stark arrested," and Anders directed Miller "to make false accusations against Dr. Stark." Filing 1 at 5, 17. The crux of the plaintiff's claims is that Anders knew Miller's statements were false or misleading, and Anders worked with Miller to cause the plaintiff to be subject to criminal proceedings without probable cause. This is sufficient to state a claim for malicious prosecution. *See McKinney*, 842 N.W.2d at 592, 595. And the alleged cooperation between Anders and Miller states a claim for civil conspiracy, the

11

underlying tort being the malicious prosecution. *See Salem Grain Co.*, 900 N.W.2d at 923-24. At this early stage of the proceedings, the plaintiff has stated a claim for malicious prosecution and civil conspiracy as to Anders.

(b) Miller's Motion to Dismiss

The plaintiff has stated claims for malicious prosecution and civil conspiracy under Nebraska common against Miller for the same reasons he stated them against Anders. Miller does not appear to meaningfully contest that. *See* filing 26 at 14. Rather, Miler asks the Court to dismiss the § 1983 claims against him, and dismiss the state law tort claims on jurisdictional grounds. *See* filing 26 at 13.

Miller asserts the plaintiff has not stated any claims against him under § 1983 because the facts alleged do not support that Miller was a state actor. A "mere invocation of state legal procedures" is not state action, and does not provide support for holding a private individual liable under § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 651 (8th Cir. 2008) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 939 n.21 (1982)). To find a private party liable as a state actor, the facts alleged must support at least an inference of joint action or conspiracy with state authorities. *Id.* (citing *DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999)). A conspiracy with state authorities requires two or more defendants who agree to deprive a plaintiff of his rights. *See Barstad v. Murray Cnty*, 420 F.3d 880, 887 (8th Cir. 2005).

The plaintiff argues that the facts alleged support an inference that Yanez and Miller had a "meeting of the minds" at some point during Yanez's interview with Miller. Filing 37 at 11. The plaintiff alleged that, at the beginning of the interview, Yanez was skeptical of Miller's claims. But as the interview went on, Yanez began to feel sympathetic towards Miller, and he believed Miller's version of events. Filing 1 at 27-28; filing 37 at 11. The

12

plaintiff appears to argue that these allegations support that at some point during the *recorded* interview between Yanez and Miller, the two mutually decided to deprive the plaintiff of his constitutional rights. *See* filing 37 at 11-12. But the facts alleged only support an inference that Yanez *independently* decided to pursue a criminal investigation against the plaintiff, based on Miller's accusations, without probable cause.[1] That's not enough to state a claim for conspiracy. There is no basis to infer that further discovery would produce more than what was in the recorded interview already in the plaintiff's possession.

The only alleged *concerted* actions are between Miller and Anders. The plaintiff alleged that Miller reported a false crime and a police officer felt sympathetic and independently pursued that crime without probable cause. The § 1983 claims against Miller, therefore, will be dismissed. The Court will retain jurisdiction over the claims against Miller under 28 U.S.C. § 1367 because the claims against Yanez in his individual capacity are proceeding, *see* filing 23, and those claims arise from the same nucleus of operative facts as the state law claims against Miller. *E.g.*, *Hunter v. Page Cnty, Iowa*, 102 F.4th 853, 868 (8th Cir. 2024).

Miller also argues that the plaintiff has failed to plead a lack of probable cause. *See* filing 26 at 11. However, in the malicious prosecution context, probable cause is evaluated from the perspective of the defendant, and a defendant who supplies false or misleading information to law enforcement

---

[1] The plaintiff argues that Miller's concession that the plaintiff pled a state law claim for malicious prosecution means that Miller concedes that the plaintiff pled a lack of probable cause for purposes of § 1983. Filing 37 at 3. However, because probable cause is evaluated from the perspective of individual defendants, it's possible to state a claim for malicious prosecution against one defendant but not another. *See McKinney*, 842 N.W.2d at 595.

13

lacks probable cause to believe a crime has been committed. *McKinney*, 842 N.W.2d at 592, 595. Whether Yanez had probable cause to believe the plaintiff had committed a crime is not a question this Court needs to answer now, and is not relevant to the plaintiff's state law claims against Miller.

### (c) Miller's Motion to Strike

Miller has also requested that this Court strike portions of the complaint. Filing 27. Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking a party's pleading is an extreme measure, viewed with disfavor and infrequently granted. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may prejudice one of the parties. *Brown v. TA Operating LLC*, No. 8:07-cv-5017, 2007 WL 2694484, at *1 (D. Neb. Sept. 11, 2007).

Miller argues certain paragraphs of the plaintiff's complaint, specifically paragraphs 63-92 and 99-102, should be stricken as irrelevant, immaterial, and scandalous. These paragraphs detail Miller's personal struggles with his mental health and drug addiction with cutting specificity. Miller argues that the plaintiff excluded facts that would have painted Miller more fairly. The Court understands, and hears the argument; however, neither the Federal Rules nor the Eighth Circuit require the plaintiff to paint Miller in a more favorable light. While some of the facts pled might be misleading by omission, that's an issue to be resolved after case progression. The extreme measure of striking the plaintiff's pleading is not warranted.

The facts alleged are *arguably* relevant and material to the plaintiff's claims related to Yanez's lack of probable cause and his inadequate

investigation . . . at least at this early pleading stage.[2] *See Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016) (evidence that a person is "clearly not a credible witness" is plainly exculpatory and may defeat probable cause for a warrantless arrest); *Kuehl v. Burtis*, 173 F.3d 646, 650-51 (8th Cir. 1999) (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998)) (officers may weigh the credibility of witnesses, but may not ignore available and undisputed facts); *but see Joseph v. Allen,* 712 F.3d 1222, 1227 (8th Cir. 2013) (officers may rely on information supplied by a victim of a crime, particularly with other corroborating evidence). The facts pled are relevant to the plaintiff's theory that, under these particular circumstances,[3] the plaintiff could have been exonerated had Yanez more thoroughly investigated Miller's claims against him. The motion to strike will be denied.

Accordingly,

IT IS ORDERED:

---

[2] In the absence of a motion to dismiss the claims against Yanez on the basis of qualified immunity, the Court declines to address whether the plaintiff adequately pled that Yanez lacked of probable cause or performed an inadequate investigation.

There's some irony that Miller accused the plaintiff of threatening to ruin Miller's reputation, and that appears to be what the plaintiff is doing by filing this complaint.

[3] The plaintiff alleges that "Miller's history and characteristics show that he is not a reliable witness." Filing 1 at 8. The plaintiff may, or may not, be surprised to learn that police officers and prosecutors rely on statements by individuals who share Miller's characteristics *all the time*. Many of those witnesses lack Miller's significant reformative efforts and achievements. The plaintiff's theory that Miller should *never* be believed if he says he is a victim of a crime is contrary to foundational principles of justice.

1. The City of Omaha's partial motion to dismiss (filing 23) is granted.

2. Douglas Anders' motion to dismiss (filing 39) is denied.

3. Willie Miller's motion to dismiss (filing 25) is denied in part and granted in part.

4. Willie Miller's motion to strike or for non-monetary sanctions (filing 27) is denied.

5. The plaintiff's claims are dismissed against Todd Schmaderer, in his individual and official capacity.

6. Schmaderer is terminated as a party.

7. The plaintiff's claims are dismissed against the City of Omaha.

8. The City of Omaha is terminated as a party.

9. The plaintiff's claims are dismissed against Nicolas Yanez in his official capacity.

Dated this 11th day of July, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge