| | | |
|---|---|---|
| JACK A. STARK, | ) | **CASE NO. 4:23-cv-03242** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| NICOLAS YANEZ, in his individual capacity; | ) | **BASED UPON** |
| WILLIE J. MILLER, in his individual capacity; | ) | **QUALIFIED IMMUNITY** |
| DOUGLAS H. ANDERS, in his individual | ) | |
| capacity; and JOHN or JANE DOES 1-5, | ) | |
| real names unknown, individually and in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants, | ) | |

COME NOW the Defendant NICOLAS YANEZ, in his individual capacity, and submits this Brief in support of his Motion for Summary Judgment based upon Qualified Immunity. In support thereof the Defendant Yanez states to the Court the following:

## INTRODUCTION

Qualified immunity shields a police officer from liability for civil damages if that officer's conduct does not violate clearly established constitutional rights of which a reasonable officer would have known. The Plaintiff Jack Stark was investigated, arrested, prosecuted, and ultimately acquitted of tampering with a witness in violation of Neb Rev Stat § 28-919. The Defendant, Sergeant Nicolas Yanez, was the Omaha Police Department detective assigned to investigate the Plaintiff, and ultimately obtained an arrest warrant for him. The Plaintiff's Complaint (Doc #1) filed in this case alleges six causes of action against Nicolas Yanez, 1) a 14th Amendment claim for an inadequate investigation, 2) a Fourth Amendment claim for a fraudulently obtained arrest warrant, 3) a Fourth Amendment claim for false arrest, 4) a Fourth

Amendment claim for malicious prosecution, 5) Fourth and Fourteenth Amendment claims for civil conspiracy, and 6) a First Amendment claim for violating the Plaintiff's right to free speech.

When viewing the facts in the most favorable light for the Plaintiff, Nicolas Yanez is entitled to dismissal pursuant to qualified immunity for all six causes of action. The Plaintiff's Complaint, at its core, appears to advocate a fundamentally inaccurate concept of probable cause and the level of evidence for it. Probably cause is not the same thing as the concept of beyond a reasonable doubt. Plaintiff's Complaint appears to suggest proof beyond a reasonable doubt is what is required to establish probable cause.

The Plaintiff's Complaint alleges various missteps by Yanez in his investigation into allegations of witness tampering made against the Plaintiff, and ultimate arrest of the Plaintiff. Yanez believes the undisputed facts, viewed in a light most favorable to the Plaintiff, show that he conducted a complete, thorough investigation, followed all leads available to him, and took care to obtain legal advice at all steps of his investigation. The totality of the evidence demonstrates that Yanez did not just have arguable probable cause to believe the crime of witness tampering was committed, which would entitle him to qualified immunity, but also actual probable cause to believe the Plaintiff committed witness tampering.

**STANDARD OF REVIEW**

Summary judgment is appropriate when, viewing the facts and the inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact." *Celotex* at 323.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 106 S.Ct. 1348 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

> [T]he mere existence of some alleged factual dispute between the parties is not
> sufficient by itself to deny summary judgment as a matter of law . . . Instead, 'the
> dispute must be outcome determinative under prevailing law.

*Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted). *Accord Dico, Inc. v. Amoco Oil Co.,* 340 F.3d 525, 529 (8th Cir. 2003). Moreover, "[t]he party opposing summary judgment cannot rest solely on the pleadings, but instead must set forth specific facts showing there is a genuine issue of material fact for the trial . . . Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Morris v. City of Chilicothe,* 512 F.3d 1013, 1018 (8th Cir. 2008), quoting *Morgan v. A.G. Edwards,* 486 F.3d at 1039. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

issue for trial.' " *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008), (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, (1986)).

## THE AFFIDAVIT AND FACTS
## ESTABLISHING PROBABLE CAUSE

Jack Stark was arrested on August 25, 2021 based upon an arrest warrant issued pursuant to a probable cause affidavit drafted and sworn to by Sergeant Nicolas Yanez. (Exhibit 1, pg. 8, ¶ 17). Sergeant Yanez conducted an investigation into witness tampering allegations Willie Miller made against the Plaintiff. ("Exhibit 1, pgs. 2-3, ¶3). He presented the evidence to a prosecutor, who decided there was sufficient evidence to initiate criminal charges. (Exhibit 1, pg 16, ¶ 16, Exhibit 2, pg 2, ¶ 4).

Yanez subsequently drafted a probable cause affidavit, submitted it to the prosecutor for review, and applied for an arrest warrant. (Exhibit 1, pg 16, ¶16). The probable cause affidavit (Exhibit 3) generally stated that the Plaintiff and Willie Miller had known each other and had a close relationship for approximately 25 years. (See Exhibit 3). When the Plaintiff learned Miller would be testifying on behalf of a sexual assault suspect in a criminal trial he sent a text message stating"

> "Just an FYI. Not sure you know it but your name is listed as a character witness for a trial in 2 weeks on Doug Anders. Do what you want but I will be testifying against him in the strongest language and if you want to know more let me know. Doubt you are involved but just letting you know." (Exhibit 3, pg. 2)

The affidavit then stated that the next day, on August 14, 2020, the Plaintiff and Miller spoke on the phone. (Exhibit 3, pg 2) During this telephone conversation the Plaintiff directly told Miller that the "he was going to need Miller to not show up for trial." (Exhibit 3, pg. 2) The Plaintiff also told Miller that he had helped Miller get admitted to Creighton University Nursing Program, could make all of the good things going for him at Creighton difficult, and how

Miller's bright future would be in jeopardy. ("Exhibit 3, pg. 2). The Plaintiff advised Miller to tell Anders' attorney he was too busy to testify due to his accelerated nursing program. (Exhibit 3, pg 2). Miller in fact did tell Anders' attorney he would not testify, although he ultimately did. (Exhibit 3, pg 2). Finally, the affidavit notes that Yanez confirmed, through phone records, that a phone call did in fact occur on August 14, 2020 at 5:37 PM. (Exhibit 3, pg. 2).

Yanez took the affidavit to a Douglas County Court judge, and the judge read the affidavit in its entirety. (Exhibit 1, pg 16, ¶16.) After reviewing the affidavit, the judge agreed the evidence outlined in the affidavit established probable cause and issued an arrest warrant for the Plaintiff. (Exhibit 26, pg 2, Exhibit 1, pg 16, ¶16) The Plaintiff was subsequently arrested. (Exhibit 1, pg 8, ¶17).

Additionally, while the above facts were the only ones Yanez included in his affidavit, his investigation did produce additional evidence to corroborate Miller's allegations. Prior to making a police report, Miller told Doug Anders' attorney, Woody Bradford, and an acquaintance, Mark Latta, about the threat made by Plaintiff. (*See* Exhibit 11, Exhibit 22, Exhibit 21, Exhibit 13). Yanez interviewed both, and they confirmed the substance of Miller's allegations were consistent, and Miller appeared to be genuinely upset and shaken. (Exhibit 1, pg 6, ¶¶12, 13). This last point was also noted by Yanez during his interactions with Miller. Miller appeared to be genuinely upset, and was holding back tears during his interview with Yanez. (Exhibit 1, pg 4, ¶8) Yanez found Miller to be credible. (Id.) Finally, Mark Latta provided a series of text messages between himself and Miller to Yanez. (Exhibit 1, pg 6, ¶12). These messages provided Yanez with additional corroboration.

## ARGUMENT

### 1. SERGEANT NICOLAS YANEZ IS ENTITLED TO QUALIFIED IMMUNITY FOR THE PLAINTIFF'S CLAIMS

Speaking in general terms, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 U.S. S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). When qualified immunity is asserted by a government official, the relevant question becomes an objective, fact-specific inquiry into the information the officer possessed and whether a reasonable officer could believe that the conduct alleged was lawful in light of clearly established law. *Id*. at 641. Further "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991), quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

To determine whether a government defendant is entitled to qualified immunity, the reviewing court must decide whether the alleged facts demonstrate that the government official violated a constitutional right and whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The court has discretion to decide which element of the qualified immunity defense to address first." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011), referencing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In the context of a motion for summary judgment, a civil rights plaintiff must "(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to

whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right" in order to survive a motion for summary judgment based on qualified immunity. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996), referencing *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir. 1993).

The Plaintiff's complaint alleges six separate causes of action against Sergeant Yanez. (Doc #1). As discussed below, he is entitled to qualified immunity on each cause of action.

## A. Sergeant Yanez is entitled to qualified immunity on the Plaintiff's 14th Amendment substantive due process claim that he conducted an inadequate investigation.

The Plaintiff's first cause of action alleges that Sergeant Yanez conducted an inadequate investigation, in violation of his 14th Amendment substantive due process rights.  In making this claim, the Plaintiff's complaint lists numerous, exaggerated allegations, but the allegations can be summarized as follows: 1) Yanez ignored evidence on Miller's phone that Miller and Anders had hatched a conspiracy to frame the Plaintiff and keep him from testifying against Anders; 2) Yanez intentionally or recklessly ignored evidence the Miller was lying, and 3) Miller was under systemic pressure from Anders attorney, Miller, and an unnamed Omaha City Councilman's office to prosecute the Plaintiff. (Doc #1, ¶¶289-310).

### i. Law Enforcement officers are entitled to qualified immunity unless their investigation is so inadequate so as to shock the conscience.

The Eight Circuit has recognized a substantive due process claim can be based upon claims of an inadequate investigation. *Wilson v. Lawrence Co. Mo.*, 260 F.3d 946 (8th Cir.2001). An officer is entitled to qualified immunity from such a claim as long as the officer's investigation does not shock the conscience.  "To establish a constitutional violation based on an inadequate investigation, a plaintiff must show that the defendant officer's failure to investigate

was intentional or reckless, thereby shocking the conscience." *Torgerson v. Roberts Co. of South Dakota*, 139 F.4th 638, 645 (8th Cir. 2025), *quoting Winslow v. Smith*, 696 F.3d 716, 732 (8th Cit. 2012). "This is a question of law to which [a court must] apply a rigorous standard." *Torgerson*, 139 F.4th at 645, *quoting Johnson v. Moody* 903 F.3d 766, 773 (8th Cir. 2018).

The Eighth circuit has provided specific guidance, in the context of an inadequate investigation, on exactly what types of law enforcement conduct shocks the conscience. The Eight Circuit has stated:

> "We have held that the following circumstances indicate a reckless or intentional failure to investigate the shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, [and] (3) evidence of systemic pressure to implicate the defendant in the face of contrary evidence." *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009), *summarizing Amrine v. Brooks*, 522 F.3d 823, 833-35 (8th Cir. 2008).

A negligent, or even grossly negligent, investigation is insufficient to shock the conscience. *See Hawkins v. Gage Co. Nebraska*, 759 F.3d 951, 956-957 (8th Cir. 2014). The law simply does not require law enforcement officers to conduct a perfect investigation to avoid suit for false arrest." *Kingsley v. Lawrence Co. Missouri*, 964 F.3d 690, 700 *quoting Joseph Allen*, 712 F.3d 1222,1228 (8th Cir. 2013).

Moreover, once an officer has probable cause, or arguable probable cause for qualified immunity purposes, that officer is under no duty to continue the investigation prior to making an arrest. *Kingsley,* 964 F.3d at 700, *quoting Clayton v. Struebing,* 734 F.3d 807, 809 (8th Cir. 2013). Failing to investigate additional leads or to explore inconsistencies does not shock the conscience. *Hawkins*, 759 F.3d at 956-57. Conduct rising to the level of a coerced confession, having knowledge of exculpatory evidence but ignoring it, or systemic pressure to implicate a

specific person, despite contrary evidence, is what is required.

        **ii.      Believing the victim of a crime does not "shock the conscience."**

Further, the due process clause does not hold law enforcement officers liable for taking a victim's allegations seriously. *See Hawkins*, 759 F.3d. at 958. A victim's statement alone, combined with a 911 call, can serve as probable cause to make a warrantless arrest. *Gilmore v. City of Minneapolis,* 837 F.3d 827 (8th Cir. 2016). Even in the face of legitimate reasons to doubt a victim's version of events, "it is not entirely unreasonable for [the officer] to credit" a victim's version of events. *Hawkins*, 759 F.3d *quoting and summarizing Brockton v. City of Sherwood, Ark.*, 503 F3d 667, 672 (8th Cir. 2007). Indeed, the Eight Circuit has repeatedly and consistently stated "officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable." *Walz v. Randall*, 2 F.4th 1091 (8th Cir. 2021), quoting *Clay v. Conlee*, 815 F.2d 1164 (8th Cir. 1987). *See also Kingsley v. Lawrence Co. Missouri*, 964 F.3d 690, 698 (8th Cir. 2020), *quoting Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816-17 (8th Cir. 2010). ("Officers are generally entitled to rely on the veracity of information supplied by the victim of a crime.") *Hawkins (supra)* 759 F.3d at 957 (Officers are required to respect the rights of both suspects and victims and may trust a victim even if the face of legitimate reasons to doubt a victim's version of events).

In this light, the Eight Circuit has directly stated "it is not the function of the police to establish guilt; the responsibility of sorting out conflicting testimony and assessing credibility or putative victims and witnesses lies with the courts" *Hawkins,* 759 F.3d at 957 *quoting Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 74 (7th Cir. 2003). To the extent an officer's decision to trust a victim turns out to be an error, [q]ualified immunity protects officers from these types of mistaken judgement." *Id.*

### iii. Sergeant Yanez's investigation does not shock the conscience.

Even when analyzing the evidence in the light most favorable to the Plaintiff, the Plaintiff cannot establish that Sergeant violated his 14th Amendment substantive due process rights. One of the two questions a court must analyze in a qualified immunity case is did a government official violate a constitutional right. Sergeant Yanez's investigation was as complete and thorough as possible. To the extent and missteps occurred, which does not appear to have happened, those missteps would amount to mere negligence and do not shock the conscience.

As discussed above, the Eighth Circuit has stated conscience shocking investigations include the following, or similarly egregious conduct: 1) coercing witness statements, 2) purposely ignoring evidence suggesting innocence, and 3) applying systemic pressure to prosecute. *Akins* 588 F.3d at 1184. Further, unless faced with clear evidence to the contrary, victims can be believed. *Walz*, 2 F.4th at 1100. No mini-trial or detailed investigation into victim credibility is required.

Examining the undisputed evidence, Yanez's investigation does not shock the conscience. Yanez's first step in the investigation was to interview Miller, who he found credible. (Exhibit 1, page 4, ¶8). Yanez did not simply rest on Miller's account of the allegations, he sought out corroborating evidence to corroborate Miller's allegations. (*See generally* Undisputed Fact #26, 28, 31-36). Through phone records, Yanez verified the Plaintiff and Miller actually had a telephone conversation. (*See generally* Undisputed Fact 26). The conversation occurred on August 14th, 2020 at 5:37 PM, one day after the Plaintiff learned Miller would be testifying for Doug Anders. (*Id.*).

To further corroborate Miller's allegations, Yanez investigated all prior consistent statements pertaining to the allegation that he was aware of. Yanez interviewed Mark Latta, an

acquaintance of Miller's, and confirmed Miller had reported the threat to him. (*See generally* Undisputed Facts 32-36). The details Miller provided to Latta tracked what Miller told Yanez; the Plaintiff told Miller to not testify, reminded Miller about how he helped Miller get into Creighton, and told Miller he could make things difficult for him and interfere with his future career. Latta confirmed that Miller was "besides himself" and "crying". (Exhibit 23, 3:11;20 to 3:11:40, Undisputed Fact 32-36). Further, Latta provided Yanez with text message between Miller and Latta, which provide further corroboration. (*See generally* Exhibit 19). Yanez also confirmed that Miller reported the threat to Woody Bradford, Doug Anders attorney, and Bradford confirmed that Miller appeared to be genuinely upset. (Undisputed Fact #32).

Yanez was also careful to investigate minor inconsistencies. The initial incident report from Miller August 29, 2020 police report indicated the threat was made on August 15, 2020, not August 14, 2020. (Exhibit 1, page 7, ¶16). Yanez reinterviewed Miller explored the inconsistency and ultimately resolved it. At this point, having no more leads are avenues to investigate, Yanez provided his thorough and complete investigation to the prosecutor, who decided to initiate criminal charges. (Exhibit 1, page 7, ¶16).

The Plaintiff alleges the above investigation "shocks the conscience" because 1) Yanez ignored evidence on Miller's phone that Miller and Anders had hatched a conspiracy to frame the Plaintiff and keep him from testifying against Anders; 2) Yanez intentionally or recklessly ignored evidence the Miller was lying, and 3) Miller was under systemic pressure from Woody Bradford, Miller, and an unnamed Omaha City Councilman's office to prosecute the Plaintiff, as well as many other factual allegations. (Doc#1, ¶¶289-310) The evidence simply does not support these allegations.

First, regarding the claim Yanez ignored evidence on Miller's phone that "proves" there

was a conspiracy between Miller and Anders to frame the Plaintiff, the undisputed evidence shows Yanez was not aware of or even legally entitled to view the messages between Anders and Miller. (Exhibit 1, page 5, ¶10) The factual record establishes that Yanez was not aware of these text messages at the time the Plaintiff was arrested. (Exhibit 1, page 5, ¶ 10). While Yanez was in possession of all of the data on Willie Miller's phone, Miller had specifically withheld consent for Yanez to view data outside of messages and phone calls between the Plaintiff and Miller. (Exhibit 1, page 5, ¶ 10, Exhibit 29, page 2, ¶5). Plaintiff's argument seems to suggest Yanez should have obtained a warrant to search a victim's phone.

Further, even if Yanez had the legal ability to access the messages, Plaintiff cites no evidence that would have led Yanez to believe evidence of a conspiracy existed on the phone requiring him to look for it. Plaintiff's allegations seem to suggest Yanez had an obligation to spend days rummaging through every private, personal detail on Miller's phone. With no knowledge that the evidence is there, why should Yanez even look?

Finally, when the messages between Miller and Anders are actually examined, they are not the smoking gun conspiracy evidence the Complaint paints them to be. The threat is a topic of conversation, and Anders is pushing Miller to report the threat because it could keep the Plaintiff from testifying in Anders' sexual assault trial, but there is no evidence of fabriacation. (See generally Exhibit 27). To the contrary, in some messages, Miller appears upset that Anders cares more about keeping the Plaintiff from testifying them the effect the threat had on Miller, and actually corroborating Miller. (See Exhibit 27, pgs 156 & 184).

In addition to alleging Yanez recklessly or intentionally ignored the evidence on Miller's telephone, the Complaint cites numerous additional reasons Yanez should have doubted Miller's credibility. (Doc#1, ¶¶ 289-310). These reasons include the fact that Miller and Anders were

friends, the fact that Miller made a police report prior to Anders trial date, to the fact the Miller was a convicted felon. None of the listed reasons, to the extent they are even true, are clearly exculpatory evidence that would require Yanez to doubt Miller. If Yanez had evidence that Miller had falsely accused others of witness tampering in the past, he would have to include this information, but not the information Plaintiff alleges in the Complaint.

As a matter of law, trusting a victim, even one with a criminal history and substance abuse issues, does not shock the conscience. Even a past criminal history does not automatically render a victim untrustworthy. *Kingsley*, 964 F.3d at 698. This is true even if the criminal history involves a crime of dishonesty, such as writing a bad check. *Anderson v. Cass County*, 367 F.3d 741, 746 (8th Cir 2004). As outlined above in detail, law enforcement officers are legally entitled to trust a victim in the absence of plainly exculpatory evidence. There is no evidence of plainly exculpatory evidence Yanez had knowledge of that would have triggered a requirement for Yanez to investigate Miller's credibility.

Finally, the Plaintiff's Complaint also makes a variety of other allegations with absolutely no supporting evidence, such as the claim that Yanez was under systemic pressure from Woody Bradford, Miller, and an unnamed City Councilmember to prosecute the Plaintiff. The record is simply void of any evidence that Yanez, any City representative, or any person, including Miller and Woody Bradford, applied systemic pressure to prosecute the Plaintiff.

When the totality of the circumstances are looked at, Sergeant Yanez interviewed Miller, found him to be credible, and sought out evidence that corroborates Miller's allegations. This is probable cause. He followed all leads presented to him, corroborated Miller's allegations, and conducted as thorough investigation as he could. The law does not require Yanez to have conducted a perfect investigation. To the extent any mistakes were even made, they do not

amount to conscience shocking behavior.  Yanez is entitled to qualified immunity on the 14th Amendment inadequate investigation claim.

**B.  Sergeant Yanez is entitled to qualified immunity on the Plaintiff's 4th Amendment claim that Yanez fraudulently obtained the arrest warrant.**

In the Plaintiff's second cause of action, he alleges that Sergeant Yanez's affidavit for an arrest warrant contained either deliberate falsehoods or a reckless disregard for the truth. (Doc#1, ¶¶311-336). A facially sufficient affidavit may be challenged it used deliberately or recklessly false statements to establish probable cause.  *Franks v. Delaware*, 438 US 154, 168-71, 98 S.Ct. 2674 (1978).   The so-called *Franks* violation requires a plaintiff to prove "1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause."  *Williams v. City of Alexander, Arkansas*, 772 F.3d 1307, 1311 (8th Cir. 2014) *quoting United States v. Box*, 193 F.3d 1032, 1034-35 (8th Cir. 1999).  A *Franks* violation can also be based on omitted facts.  In such a claim the plaintiff must prove "(1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Hawkins,* 759 F.3d at 959 *quoting United States v. Hart*, 544 F.3d 911, 914 (8th Cir. 2008) (internal quotations omitted).

The omission must be intentional or reckless.  The Eighth Circuit has explicitly stated that for a law enforcement officer to intentionally or recklessly omit information, the officer must personally know the information.  *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022). What an officer should have known is irrelevant to *Franks* violation.  *Id.*  The officer must in fact

know of the evidence, and make a reckless or intentional decision to not include it in the affidavit. The recklessness element of a *Franks* violation may be inferred if the "material omitted would have been clearly critical to the finding of probable cause." *Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) *quoting United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010).

Determining whether information is clearly critical "requires reconstructing the probable cause affidavit with the omissions and determining whether an issuing court would find the omitted information clearly critical to the probable cause analysis." *Nash v. Folsom*, 92 F.4th at. Probable cause exists if "if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense." *Nash*, 92 F.4th at 756 *quoting Howe v. Gilpin*, 65 F.4th 975, 980 (8th Cir. 2023).

Turning to the current case, even when viewing the evidence in a light most favorable to the Plaintiff, Sergeant Yanez is entitled to qualified immunity pertaining to the Plaintiff's allegation that the arrest affidavit contained fraudulent information. The record is void of any evidence that Sergeant Yanez intentionally or recklessly omitted information, or that he lied. The Complaint primarily alleges that Yanez omitted information pertaining to Miller's credibility, and that Yanez misunderstood the law of witness tampering.

As discussed above, Yanez simply did not know about the text messages between Anders and Miller. Even if these messages were "clearly critical" to a finding of probable cause, which Yanez disputes for the reasons highlighted above, a *Franks* violation does not exist if the law enforcement officer did not know about the evidence at the time the affidavit was drafted. *See Hartman*, 39 F.4th at 546. This is true even if the officer should have known the information. *Id.* The undisputed evidence shows he did not.

Additionally, as discussed at length with regards to the 14th Amendment claim, the Plaintiff's allegations pertaining to the assume text messages provide evidence of a conspiracy; they do not. As previously outlined, not only is there no evidence that the allegations were fabricated, some of the messages in fact corroborate Miller. "The question is not whether the omitted information might be of interest to the issuing magistrate. Omitted information must be clearly critical to the finding of probable cause." *Howe*, 365 F.4th at 980. Here, even if the content in the text messages is inserted to the affidavit, there is still probable cause.

The remaining information the Plaintiff alleges should have been included in the affidavit are immaterial facts pertaining to Miller's credibility. It is true and undisputed that Miller and Anders knew each other, and that Miller was a witness for Anders in his trial. In his interview with Yanez Miller stated he "loved" both Anders and his victim. (See generally Exhibit 21). It is also true that Miller has a criminal history, and a history of substance abuse.

However, even if this evidence were to be included in the affidavit, it would not necessarily negate a finding of probable cause. The statement of an eyewitness or victim provides its own indicia of reliability. *United States v. Daigle*, 47 F.3d 1076, 1082 (8th Cir. 2020). Further, as previously discussed, a criminal history, even a criminal history of writing bad checks, does not render a victim's allegations untrustworthy so as to negate probable cause. *Anderson v. Cass County*, 367 F.3d 741, 746 (8th Cir. 2004).

Considering the totality of the circumstances, Miller provided a detailed, first-person account of the threat over the phone. (*See generally* Undisputed Facts 19-23). Yanez confirmed the phone call occurred, and placed these facts in the affidavit. It is also significant that Yanez omitted other evidence that corroborated Miller's allegations. He did not mention Miller's criminal history, but also did not mention that Mark Latta confirmed Miller told him about the

threat and was "beside himself" and "crying." (See Exhibit 3). Nor did it mention that Miller had even longer, and potentially closer, relationship with the Plaintiff than he did with Anders. (Exhibit 3). There is simply no obligation to put every fact uncovered in an investigation into the probable cause affidavit. The omission of evidence was not reckless or deliberate, and Yanez is entitled to qualified immunity.

**C. Sergeant Yanez is entitled to qualified immunity for the Plaintiff's Fourth Amendment claim for false arrest.**

The Complaint alleges that Sergeant Yanez arrested the Plaintiff without probable cause, and is thus guilty of false arrest. (Doc#1, ¶¶337-368). Sergeant Yanez is entitled to qualified immunity for any claim of false arrest. Yanez had probable cause to believe the Plaintiff committed the offense of witness tampering. Additionally, Yanez did not simply go out and conduct a warrantless arrest. Yane took the time to present the evidence to a prosecutor, draft an arrest affidavit, and obtain an arrest warrant. (See Exhibit 1, pg 7, ¶16).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least "arguable probable cause." *Kingsley*, 964 F.3d at 697, *quoting Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011). Probable cause exists if "if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense." *Nash*, 92 F.4th at 756 *quoting Howe v. Gilpin*, 65 F.4th 975, 980 (8th Cir. 2023). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Kingsley*, 964 F.3d at 698, *quoting Borgman*, 646 F.3 at 523.

The United States Supreme Court has stated "[w]here the alleged Fourth Amendment

violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or, as we have sometime put it, in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235 (2012). An officer may lose qualified immunity if it is "obvious no reasonably competent officer would have concluded that a warrant should issue." *Id.* at 547, *quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). However, "the threshold for establishing this exception is a high one." *Messerschmidt*, 565 U.S. at 547. Further, a prosecutor exercising independent judgment in determining there is probable cause and filing a Complaint will break the chain of causation, and provide a law enforcement officer with qualified immunity. *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008).

Turning to a qualified immunity analysis, as previously discussed, Sergeant Yanez had probable cause to arrest the Plaintiff. It is Yanez's contention that there is no constitutional violation under the first prong of qualified immunity. Even if there were, it cannot be argued that the right was clearly established as Yanez had arguable probable cause to believe the Plaintiff has committed the offense of witness tampering. In this instance, Yanez did not make a warrantless arrest. He consulted a prosecutor, and obtained a warrant. (Exhibit 1, pg 7, ¶16). Considering this, he had arguable probable cause and is entitled to immunity.

Yanez conducted an investigation and submitted his investigation to Michael Guinan, a prosecutor with the Nebraska Attorney General's office. (*Id.*) He relied on Guinan's advice that the elements of witness tampering were met and there was probable cause to believe the Plaintiff violated Nebraska's witness tampering statute. (*Id.*) Interpreting the law is the role of the prosecutor, not the law enforcement officer. It was not until after Guinan made his decision to prosecute and instructed Yanez to draft an affidavit that Yanez did so. (*Id.*)

Prior to having the Plaintiff arrested, Yanez drafted an affidavit, had Guinan approve it, and submitted it to a neutral magistrate. (*Id.*) The magistrate, "read the affidavit in its entirety." (Exhibit 1, pg 7, ¶16). After doing so the magistrate issued the warrant. (Exhibit 26, pg 5) The affidavit, having been approved by Guinan, and facially as a matter of law, was not so deficient that no reasonable officer would believe there was not probable cause. With these facts, Yanez had, at a minimum, arguable probable cause and is entitled to qualified immunity on the 4th Amendment false arrest claim.

Finally, it is important to remember that there was, in fact, probable cause to believe the Plaintiff committed the offense of witness tampering. The reason the prosecutor reviewed all the evidence in the case and decided to initiate criminal charges was that there was probable cause. (Exhibit 2, pg 2, ¶4). The reason the magistrate reviewed the evidence and issued a warrant was that there was probable cause. The reason, when the Plaintiff filed a plea in abatement in Douglas County District Court, the District Court judge denied is motion was that there was probable cause. (Exhibit 26, pgs. 82-87).

Yanez interviewed Miller and found him credible, which he was entitled to do. *See Hawkins*, 759 F.3d. at 958. Yanez corroborated Miller's statement through witness interviews, phone records, and prior consistent statements. Even if this did not amount to probable cause, it cannot be said an objectively reasonable officer would not think that these facts amount to probable cause, and Yanez would have had arguable probable cause to arrest Stark.

**D. Sergeant Yanez is entitled to dismissal of the Plaintiff's malicious prosecution claim pursuant to qualified immunity and on the merits.**

The United States Supreme Court has stated that elements of a malicious prosecution claim pursuant to 42 USC § 1983 are 1) that a prosecution was instituted without probable cause;

2) the motive in instating the charges was malicious, "which is often defined as without probable cause and for some other purpose than bringing a defendant to justice; and 3) the prosecution terminated without a conviction. *See generally Thompson v. Clark*, 596 U.S. 36, 44, 142 S.Ct. 1332 (2022). In the Eight Circuit, malicious prosecution cases fail when there is probable cause or arguable probable cause at the time of arrest. *See Brown v. City of St Louis*, 40 F.4th 895, 903 (2022).

As discussed at length above, Yanez had probable cause believe the Plaintiff committed witness tampering. There was no constitutional violation under the first prong of qualified immunity. Even if there were, considering the totality of the evidence, and that Yanez only authored the affidavit and obtained a warrant after consulting with and at the direction of a prosecutor, and judge ultimately approved the warrant, Yanez had arguable probable cause and did not violate a clearly established constitutional right of the Plaintiff. (See Exhibit 1, page 7, ¶16). Finally, while it is not argued in detail due to the strength of the qualified immunity defense, Yanez disputes that there is any evidence that he obtained the warrant for reasons other than bringing the Plaintiff to justice. The merits of the claim are not met.

**E. Because there is no underlying constitutional violation, Yanez can not be found guilty of a claim for civil conspiracy under 42 USC § 1983.**

"In the absence of a [constitutional] violation, there [can be] no actionable conspiracy claim." *Cook v. Tadros*, 312 F.3d 386, 388 (8th Cir. 2002). Because there is no underlying constitutional violation, there can be no claim for conspiracy.

**F. Sergeant Yanez is entitled to qualified immunity pertaining to the Plaintiff's First Amendment claim for violating the Plaintiff's right to free speech.**

It is doubtful that the Plaintiff's allegation that Sergeant Yanez violated the Plaintiff's

free speech rights even states a valid claim for relief.  While the Eighth Circuit has recognized valid claims for retaliatory arrests in response to engaging in protected speech, that does not appear to be what the Plaintiff has alleged.  The complaint seems to allege that the Plaintiff did not violate the Nebraska witness tampering statute, not that Yanez retaliated against him for protected speech.  (Doc#1, ¶¶395-430).  For example, the Plaintiff is not alleging that he criticized Yanez, and Yanez arrested him for witness tampering to retaliate for the criticism.  *See e.g. Murphy v. Schmitt*, 143 F.4th 914 (2025) (where evidence suggested a police arrested the Plaintiff for walking down the wrong side of the street in retaliation for criticism lodged at the police officer by the Plaintiff.)

With this being said, as a matter of law Yanez is entitled to qualified immunity for this claim.  Yanez did not violate a clearly established constitutional right of the accused.  As a general rule, crimes involving speech, including witness tampering, do not constitute protected speech.   The Eighth Circuit, in analyzing the federal witness tampering statute, has directly ruled that speech that meets the definition of witness tampering is not protected speech. *United States v. Colhoff*, 833 F.3d 980 (8th Cir. 2016).  The Plaintiff's threat made to Miller is simply not protected speech.

Any allegation that the statue is unconstitutional certainly could have been raised as a defense in the Plaintiff's criminal prosecution.  However, it cannot be used a basis of civil liability for Yanez. A police officer is entitled to qualified immunity if the officer's conduct deprives an induvial of a constitutional right if the right was not clearly established at the time of the deprivation. *Hawkins*, 759 F.3d at 956.  At the time Yanez directed the Plaintiff to be arrested, the witness tampering statute had not been ruled unconstitutional.  To date, it still has not been ruled unconstitutional.  Yanez was entitled to rely on the presumptively valid statute, as

well as the advice of the prosecutor and the determination of the magistrate, that the language used in the affidavit amounted to unprotected, criminal speech.

An officer acts with objective probable cause when arresting a suspect based upon a presumptively valid statute, even if that statute is later declared unconstitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 99 U.S. 262 (1979). Yanez had an objectively reasonable belief that the words used by the Plaintiff amounted to a criminal offense. This is true even if, after the arrest, the statute were to be ruled unconstitutional.

**G. Causes of Action Seven and Eight**

The Plaintiff has alleged two additional causes of action based upon state common law claim for malicious prosecution, and a state common law claim for civil conspiracy. The allegations do not allege any action or inaction on the part of Sergeant Yanez, and appear to be only directed at Willie Miller and Douglas Anders. This Court, in its Order on the Motion's to Dismiss appears to agree that Yanez is not a defendant with regard to either. (Doc#44, pg 6). In the event this is not the case, Sergeant Yanez would request the opportunity to submit a supplemental brief.

**CONCLUSION**

Qualified immunity shields Sergeant Yanez from suit for monetary damages. Considering the totality of the evidence, Sergeant Yanez had probable cause to believe the Plaintiff committed the offense of witness tampering. He conducted a thorough, complete investigation, and followed the leads that were made apparent to him. To the extent it was even deficient, would have been minimally negligent, and did not shock the conscience. He took this evidence, presented it to a prosecutor, and the prosecutor decided to initiate charges. He place all material facts uncovered from his investigation in the affidavit for an arrest warrant, and presented it to a magistrate. The

magistrate issued a warrant. Even if there was no probable cause, considering the evidence uncovered, the credibility of Miller, and the advice from a prosecutor and the issuance of a warrant by a magistrate, he had arguable probable cause. All charges against Sergeant Yanez should be dismissed on the basis of qualified immunity.

WHEREFORE, the Defendant Nicolas Yanez prays that this court dismiss all allegations pertaining to Nicolas Yanez, specifically causes of action 1-6 of the Plaintiffs Complaint, and dismiss Nicolas Yanez as a Defendant.

DATED this 15th day of June, 2026.

Nicolas Yanez,

Defendant,


/s/ Tyler E. Hiipakka
TYLER E. HIIPAKKA, No. 25983
Assistant City Attorney
Ryan Wiesen, No.24810
Assistant City Attorney
Attorneys for the Defendants
City of Omaha Law Department
1819 Farnam Street, Suite 804
Omaha, NE 68183
Telephone: (402) 444-5115
tyler.hiipakka@cityofomaha.org
ryan.wiesen@cityofomaha.org


CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), I hereby certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Office Word 365, this document contains 7,267 words. The word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

/s/ Tyler Hiipakka
Assistant City Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of June, 2026, I filed the foregoing **BRIEF IN SUPPORT OF MOTION DISMISS** with the Clerk of the Court using the CM/ECF system which is to send notice of such filing to all attorneys of record registered with the CM/ECF system.

/s/ Tyler Hiipakka
Assistant City Attorney