IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACK A. STARK,<br><br>    Plaintiff,<br><br>vs.<br><br>NICOLAS YANEZ, WILLIE J. MILLER, and DOUGLAS H. ANDERS,<br><br>    Defendants. | CASE NO. 4:23-CV-3242<br><br><br>**PLAINTIFF DR. JACK A. STARK'S BRIEF IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

COMES NOW, Dr. Jack A. Stark ("Dr. Stark"), by and through his undersigned counsel of record, hereby submits the following Brief in Support of his Motion for Partial Summary Judgment.

## INTRODUCTION

Dr. Stark was arrested and prosecuted for giving his mentee advice. Willie Miller was having a hard time, and Dr. Stark advised him to focus on his studies and his future. That advice was later twisted and manipulated into an accusation of a threat. After being coached by Doug Anders and his defense counsel, Miller accused Dr. Stark of threatening him with adverse professional consequences if he testified. However, even if that were true, adverse professional consequences are not true threats under the First Amendment and cannot be legally proscribed.

1

**LEGAL STANDARD**

"The [Court] shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Hines v. Jeffreys*, No. 8:25CV30, 2026 U.S. Dist. LEXIS 48636, at *2 (D. Neb. Mar. 10, 2026). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019).

**ARGUMENT**

**A.**      **Neb. Rev. Stat. § 28-919(1)(b) is unconstitutionally broad under the First Amendment because it proscribes huge swaths of protected activity.**

"Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. 1. The hallmark of the protection of free speech is to allow "free trade in ideas" -- even ideas that the overwhelming majority of people might find distasteful or discomforting. *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 1547 (2003) (citing *Abrams v. United States*, 250 U.S. 616, 630, 63 L. Ed. 1173, 40 S. Ct. 17 (1919) (Holmes, J., dissenting). "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 1584 (2010)

Accordingly, "from 1791 to the present, 'the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas.'" *Counterman v. Colorado*, 600 U.S. 66, 73-74, 143 S. Ct. 2106, 2113-14 (2023) (quoting *United States v. Stevens*, 559 U. S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)). "These historic and traditional categories are long familiar to the bar and perhaps, too, the general

public." *Id.* These limited categories include obscenity, fraud, defamation, speech integral to criminal conduct, and true threats. *See Id.*

Content-based regulations of speech that fall within the protections of the First Amendment are presumptively invalid and will be upheld only if they survive strict scrutiny, see, e.g., *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444, 135 S. Ct. 1656, 191 L. Ed. 2d 570 (2015). A restriction is content-based "if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479, 134 S. Ct. 2518, 189 L. Ed. 2d 502 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383, 104 S. Ct. 3106, 82 L. Ed. 2d 278 (1984)). Government actions subject to strict scrutiny "will be sustained only if they are suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

Additionally, "[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection." *Snyder v. Phelps*, 562 U.S. 443, 451-52, 131 S. Ct. 1207, 1215 (2011). "Accordingly, 'speech on public issues occupies the highest rung of the hierarchy of First Amendment

values, and is entitled to special protection.'" *Id.* "As in other First Amendment cases, the court is obligated 'to make [an independent examination of the whole record'] in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Id.* 562 U.S. at 453, 131 S. Ct. at 1216. "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. *Id* (citations omitted).

Nebraska's witness tampering statute criminalizes speech based on its content, specifically regarding matters of public concern, and must survive strict scrutiny. Neb. Rev. Stat. §28-919 states in part:

> A person commits the offense of tampering with a witness or informant if, believing that an official proceeding or investigation of a criminal or civil matter is pending or about to be instituted, he or she attempts to induce or otherwise cause a witness or informant to . . . withhold any testimony, information, document, or thing.

To enforce section 28-919(1)(b), an officer would have to delve into the content of the speech of the act to divine if it was an attempt to persuade, induce, or cause some non-participation in a court proceeding. Accordingly, it must survive strict scrutiny, but it cannot.

"Induce" in its plain and ordinary sense means to "move by persuasion or influence" or to cause or produce. "Induce," https://www.merriam-webster.com/dictionary/induce, last accessed June 15, 2026. To "induce or otherwise cause" a witness to "withhold any testimony, evidence or thing" describes all of the following:

1. A priest telling a congregant, "It is immoral to testify for rapists."

2. A protester holding a sign stating, "Don't testify for rapists."

3. A counselor stating to a client, "You should not testify as it is causing you mental anguish and harm."

4. A friend stating, "I will never talk to you again if you testify for a rapist."

5. A career counselor stating, "If you testify for a rapist, it will harm your professional future and job opportunities."

6. A business associate telling someone, "If you testify for a rapist, I will never do business with you again."

7. A professor telling a student, "I don't think you should testify as it will take time away from your studies and is causing your grades to drop."

8. A colleague telling someone, "I will never give you another referral if you testify for a rapist."

9. A family member stating, "If you testify, it is going to ruin your reputation."

10. A lawyer telling a client, "Don't testify because it will harm your case."

11. A spouse stating, "I need you not to testify, because it will harm my reputation in the community."

12. A political consultant telling a client, "If you testify against the attorney general, it will harm the party's position for the next election."

Statements such as these are not only criminalized by the Nebraska statute but also undoubtedly relate to matters of public concern and are legitimate expressions protected by the First Amendment. It would be ridiculous to assert that statements about participation in a criminal sexual assault proceeding do not involve matters of public interest and concern.

This statute, as written, plainly encompasses a plethora of protected expressions and speech, yet it fundamentally lacks any limiting principle. The statute does not even require a *mens rea* as required by the First Amendment. Compare *Counterman v. Colorado*, 600 U.S. 66, 73, 143 S. Ct. 2106, 2113 (2023)("We follow the same path today, holding that the State must prove in true-threats cases that the defendant had some understanding of his statements' threatening character."); *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020) ("A defendant's reasons for attempting to induce a witness to commit any of the acts enumerated in this section are not relevant"); Model Penal Code Commentary § 241.6 at 168 ("[o]ne who acts solely out of concern for the protection of the witness should not be subject to prosecution").

While the State has an undeniable interest in preserving the integrity of its court and administrative proceedings, Neb. Rev. Stat § 28-9191(1)(b) is so broad and so unlimited that it presents an unmitigated and forbidden intrusion onto the realms of protected expression. *See Snyder*, 562 U.S. at 453, 131 S. Ct. at 1216. There is no narrowing or tailoring to the protection of any given proceeding. There is just a blanket prohibition. That means, the statute simply cannot survive strict

scrutiny. Because the Nebraska Witness Tampering statute is facially unconstitutional, this Motion must be granted.

**B.      Neb. Rev. Stat. § 28-919 is void for vagueness.**

The Nebraska witness tampering statute is not only overly broad but is so vague that it fails to provide appropriate notice that a given expression is criminal.

"The void-for-vagueness doctrine protects persons by providing 'fair notice' of a statute's applicability and by preventing arbitrary and discriminatory prosecutions of a statute's enforcement." *United States v. Ghane*, 673 F.3d 771, 776 (8th Cir. 2012) (citation omitted). "The vagueness doctrine recognizes that statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Id.* "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Id.*  "[A] statute which lacks minimal enforcement guidelines may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Porta v. Mayor, Omaha*, 593 F.

Supp. 863, 865-66 (D. Neb. 1984) (citing *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 1859 n. 8, 75 L. Ed. 2d 903 (1983)).

Since a person of common knowledge would be unable to tell if it is criminal for a priest to tell a congregant not to testify for rapists, or if it is criminal to protest outside a courthouse with a sign reading "don't testify for rapists" then the statute is void for vagueness. How is any common person supposed to know which inducements, persuasions, concerns, or exhortations are criminal versus protected? Indeed, the record shows that this statute provides no meaningful guidance to law enforcement.

Neither Yanez nor Captain Christensen believes that a person protesting outside the courthouse with a sign stating "Don't testify for rapists" would be committing a crime. (Christensen Depo. 110:14-21; Yanez Depo.183:8-15). Yet, under the plain language of Neb. Rev. Stat. §28-919(1)(b), there is no way to distinguish between a moral admonition not to testify, a paternal concern and advice not to testify, nor any other "attempt to induce or otherwise cause" a witness not to participate. Because there is no guidance in the statute, it is unconstitutionally vague and leaves police and prosecutors to their own predilections.

Because Neb. Rev. Stat. § 28-919(1)(b) is overwhelmingly vague, it cannot pass constitutional muster, and Plaintiff's Motion must be

granted. No reasonable person can possibly understand what Neb. Rev. Stat. § 28-919 (1)(b) actually criminalizes, not even the police.

**C.      Neb. Rev. Stat. § 28-919 was unconstitutionally applied to Dr. Stark because nothing Dr. Stark was accused of saying was a true threat.**

It is undisputed that the sole cause of Dr. Stark's arrest and prosecution was the alleged threat he supposedly articulated via an unrecorded phone call on August 14, 2020. (Plaintiff's Statement of Undisputed Facts ("SUF") ¶¶ 3; 9). **The crime alleged was speech**. The prohibition on the subject speech was content based. I.e., did Dr. Stark's alleged comments "attempt to induce or otherwise cause" Miller, a character witness, to "withhold any testimony, evidence, or thing?"

However, as discussed above, speech cannot be criminal unless it falls within one of the limited and narrow historical exceptions. Only one possible exception applies to the alleged conversation between Dr. Stark and Miller: true threats. Indeed, Miller and Defendant Nicolas Yanez ("Yanez") repeatedly refer to the crime as being the ***threat*** allegedly made during the phone call. (SUF ¶¶ 3-9).

"'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act

of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359-60, 123 S. Ct. 1536, 1548 (2003). "A prohibition on true threats 'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* (quoting *R. A. V.* v. *City of St. Paul*, 505 U.S., at 388). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the **intent of placing the victim in fear of bodily harm or death**." *Id.* (emphasis added).

Even if everything Miller and Yanez say is true (it is not), nothing alleged is a threat that can be criminalized under the Constitution. According to Miller and Yanez, Dr. Stark told Miller:

1. "Do what you want"

2. "Doubt you are involved but just letting you know"

3. "I am going to need you not to show up"

4. "My reputation is at stake"

5. "I have introduced you to key people"

6. "All that we have discussed that future position and your future? You can forget about all that."

7. "If Miller showed up for Court [Dr. Stark] would ruin everything for Miller"

8. "All of the things that have been discussed in the past regarding Miller's promising future would be in jeopardy if Miller testified."

(SUF ¶¶ 2-9).

None of the alleged statements would put any reasonable person in fear of imminent violence or physical harm. In fact, most of the alleged statements are not threats of any sort. Miller alleges a request: "I am going to need you to not show up." He alleges an observation: "My reputation is at stake." And a prediction: "your future, you can forget about all that." Nothing Dr. Stark is alleged to have said is in any way close to being a criminal threat.

The Supreme Court's decisions in *Virginia v. Black* and *Counterman v. Colorado* are factually helpful. *Virginia v. Black* vacated the convictions of three men who had burned crosses because the Virginia statute provided that the burning of a cross was prima facie evidence of intent to intimidate. See generally, *Virginia v. Black*, 538 U.S. 343, 367, 123 S. Ct. 1536, 1552 (2003). In *Counterman,* the Supreme Court vacated a Colorado law and overturned the petitioner's conviction

13

after he had sent hundreds of messages, including "fuck off permanently" and "you are not being good for human relations, die." *Counterman v. Colorado*, 600 U.S. 66, 70, 143 S. Ct. 2106, 2112 (2023). **In both cases, the Supreme Court insisted on *evidence* of an intent to commit violence**.

No such evidence existed in Dr. Stark's prosecution. The most egregious accusation made against Dr. Stark is that he purportedly threatened to "ruin" Miller for testifying. Yet, by Miller's own testimony, Dr. Stark had done nothing but help Miller for years. The alleged threat of ruination is neither plausible nor violent. It is akin to a movie villain stating, "I will see to it you never work in this town again." Such statements are protected speech and not true threats. See *Counterman v. Colorado*, 600 U.S. 66, 74, 143 S. Ct. 2106, 2114 (2023) ("The "true" in that term distinguishes what is at issue from jests, "hyperbole," or other statements that when taken in context do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late"))")(quoting *Watts* v. *United States*, 394 U. S. 705, 708, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969)).

Like in *Watts*, *Counterman*, and *Black*, so too here. The State of Nebraska was Constitutionally required to prove some intent to terrorize

or cause Miller to anticipate imminent violence or physical harm. Because no evidence of such harm was even alleged, Dr. Stark's entire prosecution was barred by the First Amendment.

**D.  Dr. Stark's prosecution was retaliation for his protected speech.**

The State of Nebraska never alleged that Dr. Stark engaged in any unprotected activity. At worst, he is alleged to have said that he would "ruin" Miller for testifying as a volunteer character witness for the Defendant Doug Anders. As discussed above, this is protected speech and cannot be criminalized by a state statute. Instead, he was prosecuted in retaliation for engaging in this protected activity.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013). "To prevail on a First Amendment retaliation claim, the plaintiffs must show that they engaged in protected activity, that the defendants' actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury. *Id.* "Retaliation

15

need not have been the sole motive, but it must have been a 'substantial factor' in those decisions." *Id.* "[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision." *Id.*

Here, Dr. Stark engaged in a protected activity and is alleged to have told Miller not to testify, but without any threat of violence. Defendant Yanez, as a result of this protected activity, filed the affidavit in support of an arrest warrant and pursued Dr. Stark's prosecution. Yanez's prosecution was at least partially inspired by his retaliatory motives because he thought what Dr. Stark did was "shitty." (SUF ¶ 10). Shittiness is not a crime, and therefore, Yanez's statement deprives Dr. Stark's prosecution of probable cause and demonstrates Yanez's retaliatory motive.

## CONCLUSION

Because the Nebraska witness tampering statute is unconstitutionally broad, vague, and improperly applied to Dr. Stark,

16

this Motion must be granted and summary judgment entered in Dr.

Stark's favor.

DATED this _15th day of June, 2026.

JACK A. STARK, Plaintiff,

By:   */s/ Justin W. Pritchett*
Justin W. Pritchett, #27914
Pritchett Law, PLLC
1402 Jones Street #206
Omaha, NE 68102
(402) 279-4166
justin@pritchettlawoffice.com

and

Vincent M. Powers #15866
Powers Law
411 South 13th Street, Suite 300
Lincoln, NE 68501-4936
T: 402-474-8000

## ERTIFICATE OF SERVICE

I hereby certify that June 15th, 2026, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to all parties of record.

*/s/Justin W. Pritchett*

# CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d), counsel certifies that this brief contains 3342 words including all text, captions, headings, footnotes, and quotations according to the word count function of Microsoft Word 365.

*/s/ Justin W. Pritchett*